171241. Mr. Stengel, we're ready to hear you. Good morning, Your Honors. Pleased to the Court. Justice Stengel appearing on behalf of the William F. Sandoval Irrevocable Trust. Your Honor, this is a case of first impressions. The first impression is that the plaintiff's attorney, Mr. Stengel, the appellant, William Sandoval Irrevocable Trust, and I'll just call it the Trust for Economy, contends that USC 11 USC 522 F2 parent double I, we'll call it the code, really requires that the debtor, when he asks for relief from a judgment, that only the debtor's assets, only the debtor's property is used to assess the encumbrance of an exemption. In this case, it would have been a homestead exemption. And alternatively, we would also argue if that doesn't apply, then the result in this case was somewhat incongruent with what Congress actually intended. It shocks the conscience, so to speak. And it's simply absurd, the result that happened in this particular case. It's absurd only if Judge Romero's wrong. That is correct, Your Honor. My apologies. I didn't mean to imply Judge Romero was absurd. Well, no, it's all right. Well, Your Honor. We're big kids up here. We understand that you have to, in a way, argue that. But tell us about the law. Why is this an absurd reading of the law? Well, speaking of Judge Romero, I'll sort of stick up for him. This jurisdiction, the Tenth Circuit, has been using what's called the Ziegler, what we call the literal application or the mechanical application. Whereas the sister jurisdictions all use what's called the proportional application or what's now termed the common sense application. So what I call the justice to the rich and poor alike test. I suppose you could say something like that, Your Honor. Whereas one tends to lean the other direction. Well, this appeal, again, falls on Judge Romero's decision to apply the Ziegler test. And again, as it's a first impression here, the sister jurisdictions do it differently. And let me explain why their methodology or their approach is better and explain. Ziegler says specifically that the. I would think you're going to have to argue, nice a person as you are and diplomatic as you are, that those sister circuits are right. And that Romero was wrong. I'm going to try to get there, Your Honor. Does Tenth Circuit authority really compel what Judge Romero did or are we or is this really a case of first impression? Because if this is not a case of first impression and our authority compels that result, then you're wasting your time. You're just not wasting your time arguing. But you better start really working hard on the en banc petition because we don't have the authority to to to reverse the previous authorities of the circuit without going through the en banc process. Right. So I would take it that you're not arguing that the Ziegler test. Am I pronouncing that correctly? It would be Ziegler engineering sales. Yeah, the Ziegler test. The Ziegler test. Is compelled by, compels a conclusion or a result in this case, but that rather it is instructive of the direction that Judge Romero chose to take. That is correct, Your Honor. All right. And I'll elaborate on that slightly. Judge Romero took the Ziegler approach and he, by virtue of our pleadings in that 522 action, just added the numbers up and mechanically said the numbers, it impaired Mr. Taylor's exemption, his homestead exemption. That's all the farther I need to go under the Ziegler test. And so we submitted numbers that were in opposition using the common sense approach. And in the Tenth Circuit Court of, excuse me, the Tenth Circuit Bankruptcy Court, there are, there have been two lines, two paths of cases. One is in Ree Steineke that uses the common sense approach. And then, of course, there's a Ziegler test that uses the mechanical or the other approach. And Judge Romero went with the Ziegler test and we believe that based on the facts and the interpretation that we would like to discuss today, the Steineke test is more appropriate. And if I may, Your Honor. Can I just comment on this before you go into the competing cases? The disputed section here, 522 and then subparagraph 2A, has been with us for 20 plus years. And to argue that it's an absurd result, that Congress would never have intended this, isn't that kind of an uphill fight when Congress hasn't ever looked at it again? Well, Your Honor, and thank you for calling that to the attention. Congress has never been reticent about looking at bankruptcy code when they feel that something needs to be addressed. In 1997, I believe is the year, they amended 522F, the particular section you're referencing, because the prior bankruptcy code allowed a creditor to essentially give the debtor a fresh start. So in 1994, they put in place the language that we're looking at today. Now, the line of cases that support the common sense test have been in place since 1997. If Congress felt that those line of cases or those decisions of the lower courts were wrong, they certainly could have and would have gone back in to the But they've let these line of cases prevail, and essentially the Tenth Circuit is the only, the Tenth Circuit Bankruptcy Circuit is the only case that still essentially uses that, what we call the mechanical test. So in answer to your question, if Congress, in their wisdom, thought that the new interpretation was inopposite of what they intended, they most certainly would have acted on it because they've not been hesitant to do so in the bankruptcy court. I guess I don't see why just the opposite might not be the case. I mean, these various circuit cases have already pointed out a pretty big flaw in the statute that seems like it would be easily correctable since there are a couple other places in the statute where they refer to the same statute, the debtor's proportional interest. So it seems like it would have been an easy fix, and they didn't fix it. And yet there's cases going both ways, too. It's not all one-sided. And they don't fix it. Either they weren't aware of it, so maybe we assume nothing from that. But it seems odd to me, too, that now here we are 20 years later, and they've got these cases going both ways, and they haven't fixed it. And it does look like a pretty easy fix. I've got to rely on Congress and their ability to look at a problem and find a solution. And I believe had they deemed that the common sense test was wrong, not what they intended, and it was inappropriately applied to the detriment of a debtor, which is what was ---- Was there any mention of the common sense test or these cases in the legislative history when they amended it? I didn't think there was anything like that or you were arguing anything like that. I'm just not sure it's clear Congress is even aware of this issue. They obviously were aware of the issue that caused them to amend the statute, and like you said, it had to do with making sure creditors didn't overpower these debtors. But they didn't seem to be directed at anything else. Well, I would hope our Congress would be aware of problems in the bankruptcy code because that's the sole purview of what the bankruptcy code originates from, from Congress. Let's not talk about theoretical what Congress can do. I'd like to know are there any ---- You said this is a case of first impression here in the Tenth Circuit, right? That is my understanding, Your Honor. All right. Now, are there any circuits that have held as a circuit, not as a bankruptcy court in another circuit, but as a circuit that the, we'll call it the Ziegler approach, that the Ziegler approach is the appropriate measure to take in these type of cases? Not to my understanding, Your Honor. So there really wasn't a conflict for Congress to consider if the Tenth hasn't ruled and other circuits have. So we, so the premise that, oh, there was all this law to the contrary and Congress should have acted, interpretation to the contrary and Congress should have acted is wrong, correct? Well, I would disagree with that particular analysis. I would just say Congress doesn't see. I don't know why you would disagree. I thought it was pretty friendly to you. But, okay, please tell me why I'm wrong. I'm opposed to that just to be told why I'm wrong. Maybe let me re-qualify. Congress doesn't see a problem.  I'm sorry, Your Honor. I stand corrected, Your Honor. Well, you know, in response to that, Congress doesn't see a problem. They clearly. That's my point. Now, let me ask you this. Numbers. Under your, under the approach that the Bankruptcy Court took, the economic consequence to your client, as I understand it, was quite substantial. Would you walk us through the numbers, please? I can, Your Honor. Give me a moment. I'm sure I will report this to Judge Romero. I'm sure with some sense of you. Well, Your Honor, it's sort of a historical reference to Judge Romero. This case originated out of district court through a fiduciary. We read the record. Thank you, Your Honor. I understand what he said. Well, Your Honor, then here's how the numbers come out. The trust had a judgment lien in the amount of $455,000 and change. Okay. There were some statutory liens. That would be an HOA lien and two, and potentially three tax liens. Correct. And then the, Mr. Sandoval's homestead exemption. Correct. Which, if the pleadings dictate that because of Colorado law, he's only entitled to half of the allowable homestead exemption because he's the only one in the bankruptcy action. And that originates out of Colorado law. So, essentially there was, then there was a $455,000 first mortgage that obviously is not subject to an exemption because of a contractual arrangement between Mr. Taylor and his wife with the mortgage. Purchased money lien. Correct. Okay. So, we've got roughly $984,000 in change as the claim. And then Mr. Taylor, under the Ziegler test, is allowed then to take half of the value of the property, a number that, in this case, he simply made up out of whole cloth. And those numbers then obviously exceeded the allowable exemption. So, the trust's entire claim under the judgment liens was waived. We argue that the more proper approach would be to have each one of the liens. And we come back to the language of the statute, Your Honor. And it, and this is in opposition to the appellee's position. They circle around on 522, parent to, excuse me, 522F, parent to numeral 2. And they say that all other liens on the property are subject. And then the specific language is all other liens on the property. And all they seem to imply, all imply, all of the amounts of the liens, rather when all really actually should mean that if you look at that word, it's all of the liens. You know, the independent liens. All doesn't, in this case, have a numerical value. All just means all the liens. Not the numerical value of the liens, just all of the liens. So, that we believe is inapplicable. And every other circuit, and not every other, every circuit that has looked at the issue has come to the conclusion. Come to that conclusion, Your Honor. Can you just, I'm sorry. So, if we went the other way, we would be creating the circuit split. No, Your Honor. I misstated. If we read it like our sister circuits have read it, I call them sibling circuits, because I don't like to go with a gender-specific approach. But if all our sibling circuits have all ruled in one direction, and you want us to rule in that same direction as our sister circuits. Yes, Your Honor. Oh, I'm sorry. No, that's all right. On that point, all of our sister circuits have had to use the absurdity doctrine to get there. Is that right? Nobody has read this language, plain language, the way that you want it to be read. Not exactly, Your Honor. They do, and then they also qualify it and say, but if we didn't use the common sense test or the proportional language, not doing so would result in an absurd opinion. Well, can I back the absurdity? Because you're asking us if we don't agree that the statute's language is plain in your favor, which seems kind of unlikely. But let's say we have to go to the absurdity exception, which we rarely apply. And this circuit has said, at least the case law I looked at said to apply it, the result must shock the general or moral conscience. I did not see that. I looked at the other three circuits' cases. They don't seem to have that built into their absurdity doctrine. Or if they did, they ignored it. None of them talked about that. And does this? I'm not sure it shocks the general or moral conscience, whatever that means. Does it? I believe it. In this particular case, it does. But I'd like to follow up on a question there. The word all, again, is not a numerical quantifier. It wraps up all the meaning. We understand that argument. Your time is up, unfortunately, counsel. Thank you, Your Honor. We're ready to hear from you. Well, excuse me. Ms. Riley, sorry about that. May it please the Court. Ms. Carrie Riley, appearing on behalf of the debtor, Mark Taylor, who's the appellee in this case. Before we lose it, can you address that all point? Yes, Your Honor. With respect to the language of the statute itself, Section 522F2A, which is clear and unambiguous on its face, requires that the Court determine the amount of impairment to the lien or to the debtor's claim of exemption by adding together the liens to be avoided, all other liens on the property, and the amount of exemption to which the debtor would be entitled in the absence of any liens. The sum of that is then compared to the value of the debtor's interest in property. The language of this statute, again, is clear and unambiguous. It's not subject to more than one interpretation. Where it says all, Congress, in fact, meant all. If that's true, that it's not subject to any other interpretation, how come all the other circuits have gone the other way? Your Honor, the only basis that those circuits have used to apply the so-called common sense approach, which deviates substantially from the language of the statute, is to use the absurdity doctrine, which this Court has held should only be applied in very limited circumstances. It doesn't just seem like a – if we were to agree with our sister circuits, then in effect we are basically saying that any other result would be absurd. That's correct, Your Honor, but only absurd in the select number of cases where the property that is at issue is owned with a non-filing co-owner. In all other cases where the property is jointly owned and there's a joint bankruptcy petition, or where there is only one owner, the plain language application of this statute doesn't lead to any absurd results. Okay, let me walk you through this in an abstract manner. You have a co-owner, A, and B, who own property as husband and wife. Husband says, for whatever reason, I'm taking bankruptcy. Wife says, no, I'm not. But they own the asset together. And the numbers are roughly these numbers. In one case, if the husband takes all the benefit of all of the liens, although he's theoretically responsible for only half of them, if he takes all of the homestead exemption, although he's under Colorado law not entitled to take the whole exemption, you get to the result of this case. But if you apportion the liens and you apportion the homestead exemption and you take the proportionate, I would call it the proportionate test. I don't know where the term common sense test title or handle comes for it. But if you take the proportionate approach, the creditor gets the benefit and the husband gets the benefit of one half of his interest in this property and one half of his homestead exemption. In the other case, he gets a windfall. He owes nothing. The creditors end up holding the bag and husband still owns his half. Wife still owns her half. And the liens are all still there. Who's going to pay for the liens? Well, Your Honor, even though it may result in a windfall to the debtor in these situations, that's not necessarily the standard for the absurdity doctrine. Well, wouldn't you say that a windfall under this circumstance is why the word absurd is used? No, Your Honor, I would not. All right. Because the absurdity doctrine requires a result that is so gross as to shock the general moral and common sense of the nation. Well, here you go. You have someone who is pilfered from a trust, stolen hundreds of thousands of dollars, and now walks away with a ton of cash in his pocket. That might shock someone's moral sensibility. Your Honor, the trust has a non-dischargeable claim. That is true under Section 523. But the fact that that claim is non-dischargeable does not need to play, does not play into the fact that this lien is still impairing the debtor's homestead exemption. And applying the plain language of Section 522F2A is avoidable in its entirety because the absurdity doctrine does not apply to this case. While the result where there is a non-filing co-owner and there's a resulting windfall to the debtor may be unintended or unanticipated by Congress, it is not so absurd as to be contrary to what Congress intended. The Court may find any number of statutes to be foolish in their application, but it is up to the legislature and not the courts to rewrite those statutes when the plain language is clear and unambiguous and the result is not, again, so gross as to shock the general moral conscience. Let me ask you, because you keep coming back to plain language, and there is a response to that, that maybe a ray of light can get through the crack. That is, as you've heard from your opposing counsel, the words the property, that's a lot of the fight. And your opposing counsel points to a couple of bankruptcy section codes, 541A1, a big one, what's property of the bankruptcy estate, which says it's the property of the debtor. And also 1334, same thing as far as the property and then being used in the context of the debtor. Why can't you do the same thing with all liens on the property? Well, in that situation, Your Honor, to read the term property in all other liens on the property would be to add additional language to the statute that is not there. For instance, in the earlier portions of Section 522, it provides that the court may avoid the fixing of a lien on the debtor's interest in property. There it expressly adds the language, the debtor's interest in property. Similarly, when later in the statute it's determining the amount of impairment, you're comparing it to the value of the debtor's interest in property. Section 541, property of the estate. Again, the property of the estate is comprised of the debtor's interest in property, where Congress has intended for the court to look at specifically the debtor's interest in property, it has done so expressly. Well, is there anything in this case where the husband has agreed to pay all of the liens so that the wife, in her interest in the property, doesn't have to pay anything on the liens? Is there anything like that here? Your Honor, there's nothing in the record to indicate whether or not the payments on the underlying mortgage, HOA liens, or tax liens have been apportioned solely to the debtor or solely to the wife or any mixture of the two. There's nothing in the record that indicates that because it's not necessary to get that far. Now, let me continue with my theoretical abstract. So the husband gets a divorce, and under your approach, he pays, he gets zero, the trust from which he pilfered the money gets nothing. Now, the wife says, well, I guess I'm going to have to get bankruptcy after all. So she files, in this theoretical case, for bankruptcy as well. I take it that you're going to use the same formulas and she's going to owe nothing either, right? She's going to discharge everything. Well, Your Honor, as applied to this case, the judgment liens were only attached to the debtor's interest in the property. They were not attached to the wife's interest in the property. The judgments were only against the debtor, Mr. Mark Taylor, in this case. So really, even if the wife were to or the ex-wife were now to go and file a bankruptcy case, unless the estates were jointly administered, we would still be looking at the same formula if she were to go to avoid judgment liens in her case as well. But it doesn't change the fact that the Supreme Court and this Court in numerous instances have held that where the language of the statute is clear and unambiguous on its face, the statute must be applied as written. Courts must presume that the legislature says in a statute what it means and means in a statute what it says. Are there any cases that agree with you on the circuit level? Not on the circuit level, Your Honor. All right. Now, are there any cases that agree with you at the United States Supreme Court level? No, Your Honor. All right. Then why should we be listening to any arguments that are not based upon any legal authority to which we are bound? We are bound by the cases of the United States Supreme Court. We are bound to the cases of the United States Court of Appeals from the Tenth Circuit. And in the absence of authority, we may look to the pronouncements of our other circuits. And then we can look at the other cases out of the bankruptcy courts and out of the U.S. district courts as advisory and informative. But we're not bound to them. Certainly, Your Honor. And as applied to Section 522F2A, this is an issue of first impression. It hasn't reached the Supreme Court because there hasn't been a circuit split yet. And you want us to create it. You want us to invite the Supreme Court to reverse this. Because when we get up to the United States, when this case gets up to the United States Supreme Court, I can read the briefs in my mind right now. All the circuits marching in a line have all ruled X. And the Tenth Circuit, at your invitation, has ruled Y. And they said the wisdom of the justices, of the judges, of the United States Courts of Appeals, Your Honors, have all ruled in this way. And the Tenth Circuit stands out there as an outlier. What do you think the chances of us getting affirmed are? Well, Your Honor, in the... Well, let's answer that question and then explain. What are the chances of us getting affirmed? Your Honor, I think that the Supreme Court would affirm the decision of the Tenth Circuit were it to apply... And overrule everybody else. Yes, Your Honor. And disturb all the rest of the established bankruptcy jurisprudence of America. Because what? Because, Your Honor, the only basis for the other circuits to avoid the plain language of the bankruptcy code in this situation is to use the absurdity doctrine. Without any specific identifying markers to say, here's exactly what is shocking or contrary to congressional intent. Instead, they have merely said that it creates this windfall to the... What do you think about the Sandoval Trust, what they're going to say when they get this ruling that you're inviting? They're going to say, this is shocking. Like... We get a... This guy pilfered hundreds of thousands of dollars, and we get nothing. And they're going to want the court to sit in the position that the legislature should be sitting in. I'm sorry. Just... I was just trying to say something. I'm trying to ask about the absurdity doctrine, because that's what this all comes down to. And I think you do have a question about what the Supreme Court may do. One member of that Supreme Court that used to be a former member of this Court doesn't like the absurdity doctrine, and has said so in a published case in our court. So why aren't... Why don't you tell us about what the Supreme Court thinks about the absurdity doctrine and what they might think about a case where we applied it? Your Honor, as the Supreme Court stated in Crooks v. Harrelson, the absurdity doctrine should really only be applied in very limited situations, where, again, the outcome of the application of the plain language of the statute is so absurd that it could not possibly have been what Congress intended. It is not enough for the courts to determine that the outcome is foolish. It is for Congress to make that determination. And why doesn't this meet that, though? Congress surely did not intend this result in this case. But then it is for Congress to amend the statute, not for... Well, it doesn't have to amend the statute. It just has to read it the way the other circuits have read it. But only in this... All doesn't necessarily mean all the way you say. It can mean all liens, not 100 percent of all liens. You want us to read it at 100 percent of all liens, rather than the debtor's interest in the lien, in all liens. But, again, there's nothing in this apparent windfall to the debtor in this select number of cases where there's a non-filing co-owner. And to be clear, the absurdity doctrine is not attempted to be applied to any of the other cases in which Section 522F is used to avoid the fixing of a judicial lien when it impairs an exemption. It is only in this select number of cases where there is a non-filing co-owner. And there is nothing in this windfall to the debtor that is contrary to congressional intent. In initially enacting the statute, the purpose of enacting Section 522F, as the United States Supreme Court stated in Ferry v. Sanderfoot, is to protect the debtor's exempt property. In 1994, when Congress amended the statute, it was to include an arithmetic formula to be used uniformly, as opposed to having multiple approaches from different courts in determining the amount of impairment to the debtor's claim of exemption. Well, the problem in this instance is it's protecting the debtor's non-exempt property as well when it shouldn't. And why isn't that absurd? Because, Your Honor, it still is falling in line with congressional intent, where it is applying the uniform arithmetic test that was enacted in 1994 when the statute was amended. Congress has had over 20 years to go back and change the statute to include additional language to ensure that it only relates to the debtor. Congress has not done so, and no windfall to the debtor is contrary to congressional intent. And so, as a result, there are no results here that are so gross as to shock the general or moral conscience. So, as a result, the absurdity doctrine does not apply, and this Court should be bound by the plain language of the statute and should therefore affirm the decision of the Bankruptcy Court in this case. Thank you, Counsel. Thank you for finishing within 24 seconds for me. Counsel, you were out of time. Is that correct? Thank you. So the case then stands submitted. Counsel are excused. We, as I said, will go into recess, so we will not announce an adjournment. We'll just proceed downstairs. Thank you.